**STATE of Missouri, ex rel., Gail D.
HUGHES, in his capacity as Chief State
Supervisor, Board of Probation & Parole, State of Missouri, Relator,**

**v.**

**Honorable Gary P. KRAMER, Judge,
Twenty-third Judicial Circuit, State
of Missouri, Respondent.**

**No. 50449.**

Missouri Court of Appeals,
Eastern District,
Division Four.

Dec. 24, 1985.

David C. Mason, General Counsel, Dept. of Corrections and Human Resources, Jefferson City, for relator.

Kurt D. Breeze, Nixon, Nixon & Breeze, Hillsboro, for respondent.

CARL R. GAERTNER, Presiding Judge.

This is a prohibition proceeding instituted by Gail D. Hughes (Relator) in his official capacity as Chief State Supervisor of the State Board of Probation and Parole (the Board) to prohibit the Honorable Gary P. Kramer (Respondent) from taking any further action and to stay enforcement of a civil contempt order. We have issued our preliminary rule and now make that rule absolute.

The facts are not in dispute. Steven Kostro, defendant in the underlying case, was charged with the class D felony of leaving the scene of a motor vehicle accident. The information was later amended and he was charged with and pled guilty to careless and imprudent driving, a class A misdemeanor. Respondent granted Kostro a suspended imposition of sentence and placed him on two years' probation to be supervised by the Board. Respondent was then notified both orally and by letter that the Board, in its discretion pursuant to § 217.750, RSMo.Cum.Supp.1984, had elected not to supervise certain misdemeanants, including those found guilty of careless and imprudent driving. In response the judge informed Mr. Bergfeld, District 15 Supervisor for the Board, that the judge's order would stand and that the Board should either comply or notify the court of its refusal. Subsequently, Respondent received a letter from Relator fully detailing the Board's position pursuant to § 217.750. Respondent then found the Board's policy constituted a civil contempt of a lawful order and issued a citation for contempt of court and an order to show cause against Relator.

Section 217.750, RSMo.Cum.Supp.1984, provides:

1. At the request of a judge of any circuit court, the board shall provide probation services for such court as provided in subsection 2 of this section.

2. The board shall provide probation services for any person convicted of any class of felony. The board shall not be required to provide probation services for any class of misdemeanor except those class A misdemeanors the basis of which is contained in chapters 565, 566 and 570, RSMo. The board may in its discretion accept other persons for supervision who have been convicted of other crimes.

In an effort to support the validity of his contempt order, Respondent challenges the

constitutionality of section 217.750 as being an improper delegation of judicial power to an agency of the executive branch of government. He argues that sentencing, including the granting of probation and the setting of conditions thereof, is inherently a judicial function which may not be proscribed or delegated. We disagree.

█ In our tripartite form of government, it is the function of the legislature to define criminal offenses and to establish the ranges of punishment therefor. The judicial function is limited to the imposition of a sentence within the range of punishment fixed by the legislature. Thus, sentencing power is not inherent to the judiciary, but is dependent upon legislative authorization. Similarly, the courts have no inherent authority to grant probation to one found guilty of a criminal offense. The principles underlying the respective functions of the three branches of government insofar as punishment after conviction of a criminal offense is concerned were thoroughly discussed and established by the United States Supreme Court in *Ex Parte United States*, 242 U.S. 27, 37 S.Ct. 72, 61 L.Ed. 129 (1916). In holding that courts have no inherent power to refuse to impose or execute a sentence fixed by statute, the court stated:

> Indisputably under our constitutional system the right to try offenses against the criminal laws, and, upon conviction, to impose the punishment provided by law, is judicial, and it is equally to be conceded that, in exerting the powers vested in them on such subject, courts inherently possess ample right to exercise reasonable, that is, judicial, discretion to enable them to wisely exert their authority. But these concessions afford no ground for the contention as to power here made, since it must rest upon the proposition that the power to enforce begets inherently a discretion to permanently refuse to do so. And the effect of the proposition urged upon the distribution of powers made by the Constitution will become apparent when it is observed that indisputable also is it that the authority to define and fix the punishment for crime is legislative, and includes the right in advance to bring within judicial discretion for the purpose of executing the statute elements of consideration which would be otherwise beyond the scope of judicial authority, and that the right to relieve from the punishment fixed by law and ascertained according to the methods by it provided, belongs to the executive department.

*Id.*, 242 U.S. at 41, 42, 37 S.Ct. at 74.

In *Ex Parte Bugg*, 163 Mo.App. 44, 145 S.W. 831 (1912), it was held that a court order suspending the execution of a sentence was void as a usurpation of the pardoning power of the executive. "In the absence of some other statutory provision, the judgment of a court imposing a jail sentence can only be satisfied by a compliance with its terms." 145 S.W. at 832. The Missouri Supreme Court voided a judicial grant of conditional probation in *Ex Parte Thornberry*, 300 Mo. 661, 254 S.W. 1087 (banc 1923), stating:

> The reason for the rule is found in the nature of our systems of government, national and state. The power to grant reprieves and pardons and that to sentence for crime being distinct and different in their origin and nature, their exercise has been kept separate and distinct, the one having been confided to the executive and the other to the judicial department. The recognition of the power of a court to suspend a sentence indefinitely or to stay its execution would be to allow the judicial department to usurp the power and exercise one of the functions of the executive department. This is upon the well-grounded theory that a court's powers in the administration of the criminal law is limited, upon the conviction of the accused, to the imposition of the sentence authorized to be imposed.

*Id.* 254 S.W. at 1091–92. More recently, this court stated in *State v. Motley*, 546 S.W.2d 435, 437 (Mo.App.1976), that the power of a judge to grant probation was dependent upon statutory authorization. Thus, in the absence of legislative authori-

zation, a court may no more refuse to punish one found guilty of a crime than it can punish for conduct not legislatively defined as criminal.

■ We have perhaps grown so accustomed to considering probation to be a matter of judicial discretion that we tend to overlook the fact that the exercise of this discretion is predicated entirely upon legislative authorization. The only inherent power to grant clemency after conviction is that of executive pardon. It is a legislative prerogative to create the power of judicial clemency in the form of probation or to deny such power, as in the case of First Degree Murder, § 565.020, RSMo.Cum. Supp.1984; Armed Criminal Action, § 571.-015, RSMo.1978. Therefore, no constitutional infringement upon inherent judicial power results from the conferring upon the Board by the legislature of authority to conserve the Board's resources by refusing to supervise certain misdemeanants.

Alternatively, Respondent contends that even if probation not be within the inherent power of the courts, exclusive control thereof has been conferred upon the courts by legislation. Therefore, by giving the Board the right to exercise discretion under § 217.750.2, the legislature has inconsistently delegated judicial power to the executive. Respondent's line of argument combines § 559.012, RSMo., "The court may place a person on probation ... upon conviction of any offense ..." with § 217.-650(7), RSMo.Cum.Supp.1984, " 'Probation,' a procedure under which a defendant found guilty of a crime upon verdict or plea is released by the court without imprisonment, subject to conditions imposed by the court and subject to the supervision of the board." Therefore, Respondent argues, if probation by definition includes supervision by the Board, and if the Board has discretion to refuse to supervise, then the Board has the power of controlling judicial discretion to grant or to deny probation.

■ If we were to accept Respondent's argument, it would lead to the absurd conclusion that the legislature intended to maintain the possibility of probation in felony cases but to deny the possibility of probation in minor misdemeanor cases. We must presume the legislature did not intend to enact such an absurd law and we must favor a statutory construction that avoids unjust or unreasonable results. *State ex rel. McNary v. Hais*, 670 S.W.2d 494, 495 (Mo.banc 1984). Moreover, where two acts are seemingly repugnant, they must be construed together and, if not irreconcilably inconsistent, both must stand. State Inf. *Ashcroft ex. rel. Bell v. City of Fulton*, 642 S.W.2d 617, 620 (Mo. banc 1982). Review of the history of this legislation demonstrates that any inconsistency is merely facial, not real and certainly not irreconcilable.

Sections 217.650 to 217.810 were enacted in 1982 as H.B. # 1196, 1982 Mo. Laws. Section 217.650 consists of definitions and is prefaced with "as used in sections 217.-650 to 217.810, *unless the context clearly indicates otherwise*, the following terms mean:...." (emphasis added). Section 217.650(7), defining probation as including supervision by the Board, has remained unchanged. Section 217.750 as enacted in 1982 provided: "At the request of a judge of any circuit court, the Board shall provide probation services for such court." The section was amended in 1983 by the addition of a subsection, providing: "2. Notwithstanding the provisions of subsection 1 of this section or any other provision of law, the board of probation and parole shall not be required to supervise the probation or parole of any person convicted of class B or C misdemeanor but may, in the discretion of the board, accept such a person for supervision."

The language of this amendment clearly demonstrates the intent of the legislature to authorize probation unsupervised by the Board in certain cases, thus invoking the prefatory clause "unless the context clearly indicates otherwise" of § 217.650. The fact that thousands of persons convicted of class B and C misdemeanors have been granted probation without supervision since the date of the 1983 amendment is a matter of common knowledge.

■ The 1984 amendment to section 217.750, here challenged by the Respondent, confers no new or additional delegation of discretion to the Board. Viewed in the light of its legislative history, *St. Louis Southwestern Railway Company v. Loeb,* 318 S.W.2d 246, 252 (Mo.banc 1958); *Springfield General Osteopathic Hospital v. Industrial Commission,* 538 S.W.2d 364, 369 (Mo.App.1976), this amendment merely enlarges the class of misdemeanor cases in which the Board was authorized to refuse supervision. The amendment does not, as contended by Respondent, prohibit him from granting probation to a misdemeanant of a class determined by the Board not to warrant supervision.

Accordingly, we find no unconstitutional infringement upon judicial power by reason of § 217.750. Our preliminary writ of prohibition is hereby made absolute.

SATZ and SIMON, JJ., concur.